UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------X

PATRICE CARGO,

                      Plaintiff,

      v.

MAPLEWOOD OPERATING, LLC, *individually and d/b/a* MAPLEWOOD NURSING AND REHABILITATION CENTER; and KEVIN STANTON, *individually*,

                      Defendants.

------------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

Plaintiff Demands a Trial by Jury

Plaintiff, PATRICE CARGO, as and for her Complaint against the above Defendants respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), as well as Pennsylvania State Law, and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of her sex/gender, subjected to a hostile work environment on the basis of the same, and subjected to *quid pro quo* sexual harassment.[1]

## JURISDICTION AND VENUE

---

[1] As Plaintiff's analogous claims under the Pennsylvania Human Relations Act and Philadelphia Fair Practices Ordinance are not yet ripe, Plaintiff reserves the right to amend her Complaint to add such claims once they become available to her.

2. This action involves questions of federal law under Title VII of the Civil Rights Act of 1964.

3. This court has supplemental jurisdiction over the forthcoming state and city causes of action.

4. Venue is proper in this district based upon the fact that Plaintiff was employed by Defendants within the County of Philadelphia, Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, the events at issue took place in Philadelphia County, Pennsylvania within the Eastern District of Pennsylvania.

5. Around November 18, 2019, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC"), Pennsylvania Human Relations Commission ("PHRC"), and Philadelphia Commission on Human Relations ("PCHR") against Defendants as set forth herein.

6. Around August 12, 2020, the EEOC issued Plaintiff her Notice of Right to Sue.

7. This action is being commenced within 90 days of receipt of the EEOC Notice of Right to Sue.

## PARTIES

8. Plaintiff PATRICE CARGO (hereinafter referred to as "Plaintiff" and/or "CARGO") is seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against and harassed by her employer on the basis of her sex/gender, sexually assaulted at her workplace, and forced to endure a hostile work environment.

9. Plaintiff CARGO is an individual female who resides in the County of Philadelphia within the Commonwealth of Pennsylvania.

10. At all times material, Defendant MAPLEWOOD OPERATING, LLC (hereinafter referred to as Defendant and/or "MAPLEWOOD") was and is a domestic limited liability company duly authorized to do business within the Commonwealth of Pennsylvania

11. At all times material, Defendant MAPLEWOOD conducted and continues to conduct business under the registered fictitious name of MAPLEWOOD NURSING AND REHABILITATION CENTER.

12. At all times material, Defendant MAPLEWOOD operated a nursing and rehabilitation center located at 125 W. Schoolhouse Lane, Philadelphia, PA 19144.

13. At all times material, Defendant KEVIN STANTON (hereinafter "STANTON") was employed by Defendant MAPLEWOOD as a Supervisor at their 125 W. Schoolhouse Lane location.

14. At all times material, Defendant STANTON held direct supervisory authority over Plaintiff.

## MATERIAL FACTS

15. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

16. Around February 2019, Defendant MAPLEWOOD hired Plaintiff as a Housekeeper at their 125 W. Schoolhouse Lane facility.

17. At all times material, Plaintiff reported directly to Defendant STANTON.

18. Very soon after Plaintiff began her employment, STANTON began to show sexual interest in her.

19. Initially, STANTON would act overtly friendly to Plaintiff and would ask her invasive personal questions, such as whether she had a boyfriend.

20. However, STANTON soon began to much more aggressively sexually harass Plaintiff on a regular basis.

21. By means of example, STANTON would repeatedly make sexually explicit comments to Plaintiff such as asking if she "got horny," asking "did you give your boyfriend some?" [referring to sexual intercourse] and asking "are you trying to have a threesome?" when he observed her speaking with male coworkers.

22. Even more egregiously, STANTON would also state to Plaintiff that he "need[ed] some pussy" and demanded that she send him explicit photos of her genitalia.

23. STANTON would also regularly ask Plaintiff to come to his outside of work, and would even brazenly state that he was coming to "pick [her] up" even when Plaintiff refused his advances. STANTON's actions were so pervasive that Plaintiff was forced to regularly come up with excuses for why she was not available to interact with him outside of work.

24. On another occasion, STANTON insisted that Plaintiff drive to a store with him in his personal vehicle. During the drive back, STANTON repeatedly demanded that Plaintiff show him her breasts. When Plaintiff refused, STANTON threatened to cut her work hours, stating that he had the power to alter her work schedule.

25. Accordingly, fearful of losing her job if she continued to refuse, Plaintiff showed STANTON her breasts to avoid the threatened negative job consequences.

26. During this same time, STANTON would typically become angry if Plaintiff spent time at work speaking with any of her female coworkers.

27. In one such incident, STANTON accosted Plaintiff after apparently observing her speaking with a female coworker during a lunch break. In doing so, STANTON came to the third floor of the building in which Plaintiff was working and demanded to know what Plaintiff had been discussing with her coworker. When Plaintiff responded that they had just been speaking about general things as friends, STANTON angrily left, but later telephoned Plaintiff and yelled at her to "limit [her] conversation" with her coworkers.

28. Following that incident, Plaintiff's coworker telephoned her and confided in her that STANTON had been repeatedly sexually harassing her as well, and had even exposed his penis to her and sexually assaulted her by grabbing her vaginal area on one occasion. In response, Plaintiff disclosed that STANTON had been harassing her as well.

29. The day after that telephone call, when STANTON observed Plaintiff at work, he grabbed his penis through his pants while staring at her and stated "you gonna [sic] miss this."

30. Once again, Plaintiff was disturbed and highly upset by STANTON's graphic sexual harassment.

31. Around June 2, 2019, while Plaintiff was cleaning on her assigned floor, STANTON visited her building and began following her around while she cleaned. Eventually, STANTON told Plaintiff to meet him in the basement because he "needed to discuss something" with her, and then left the room.

32. Plaintiff was immediately suspicious of STANTON's intentions, as meetings between staff were typically called via loudspeaker, not in person.

33. Accordingly, Plaintiff continued working on the third floor. STANTON then came back into the room where she was cleaning and angrily stated "Didn't I tell you to meet me in the basement?"

34. Fearing that STANTON would become angrier if she failed to do so, Plaintiff stopped cleaning and began to walk towards the basement of the building.

35. As Plaintiff was highly concerned about STANTON's intentions given his history of sexually harassing her, Plaintiff intentionally got off the building's elevator at the ground floor and took the stairs to the basement so that she would be in full view of the ground floor's security cameras.

36. When Plaintiff entered STANTON's office in the basement, he abruptly kicked away a barrel that had been holding the door open, grabbed Plaintiff, aggressively turned her around, and pressed her against the door with her hands pinned above her head. STANTON then turned off the office light and began rubbing his crotch against Plaintiff's buttocks, grabbing her breasts from behind, and kissing her neck. STANTON then asked, "Do you want it?" to which Plaintiff immediately yelled "No!" and tried to get away from his grasp.

37. As STANTON was much larger than Plaintiff, she was unable to easily get away from his ongoing assault. Accordingly, STANTON continued to assault Plaintiff and press his body against her despite her protests. STANTON repeatedly stated, "Do you want it?" while doing so, until he eventually stated in words or substance that "I'm not going to beg you" and turned the lights back on.

38. However, once he did so, STANTON apparently changed his mind, and once again turned the lights off and assaulted Plaintiff in the same way.

39. Eventually, STANTON released Plaintiff and sent her back to her assigned floor.

40. Disturbed, horrified, and frightened of the violent assault, Plaintiff notified MAPLEWOOD's Human Resources department about STANTON's assault and ongoing harassment around Friday, June 7. Plaintiff stated to Human Resources that she also feared retaliation from STANTON for reporting the assault, and that she was not willing to return to work as scheduled on June 12 as a result.

41. Incredibly, Defendants informed Plaintiff that she would need to inform her supervisor if she was calling out – the same supervisor (STANTON) who had violently sexually assaulted her.

42. Accordingly, Plaintiff communicated via text message that she would not be working that day. Plaintiff also ensured that Defendants were aware that she had called out that day to avoid the absence being designated a "no call" absence.

43. Around the same time, Defendants' Human Resources department contacted Plaintiff to ask if she was willing to file a police report about STANTON's assault, which Plaintiff did that same day.

44. Plaintiff then informed MAPLEWOOD's Human Resources department that she had done so and asked what the next steps would be. In response, MAPLEWOOD informed Plaintiff that the police report would be "in the file if anything else happened." The only further information the MAPLEWOOD would provide Plaintiff was that STANTON "wouldn't be there" on days that Plaintiff worked.

45. Accordingly, Defendants failed to take immediate appropriate action following Plaintiff's report of being violently sexually assaulted by her supervisor.

46. Furthermore, on at least two occasions, STANTON visited Plaintiff's place of work following his departure from MAPLEWOOD, causing her substantial distress and to fear for her safety upon seeing him at her workplace. On one occasion when Plaintiff reported this to her supervisor, she was simply told in words or substance to "ignore [him]" because she should "act like a grown woman."

47. On another occasion, Plaintiff reported STANTON's presence to Human Resources after seeing him on MAPLEWOOD's property, and was again largely ignored.

48. As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

49. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

50. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

51. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

52. The above are just some examples of some of the discrimination and harassment to which Defendants subjected Plaintiff.

53. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

54. Plaintiff claims alternatively (in the event that Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

56. Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

57. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her sex/gender by subjecting her to a hostile work environment.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

58. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

59. Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

60. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her sex/gender by subjecting her to *quid pro quo* sexual harassment.

**AS A THIRD CAUSE OF ACTION
FOR ASSAULT AND BATTERY
UNDER PENNSYLVANIA STATE LAW**
(**As against Defendant STANTON**)

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. On several different occasions, Defendant STANTON assaulted and battered Plaintiff.

63. Plaintiff did not consent to the contact, and the contact was unwanted and offensive.

64. As a result, Plaintiff suffered damages.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory

damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  Philadelphia, Pennsylvania          **DEREK SMITH LAW GROUP, PLLC**
       October 9, 2020          *Attorneys for Plaintiff Patrice Cargo*

By: _____
Nathaniel N. Peckham, Esq.
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Tel. (215) 391-4790
Fax: (215) 893-5288
nathaniel@dereksmithlaw.com